CHARLES B. EATON *vs.* SARAH F. NEWHALL & others.

Worcester.   October 6, 1892. — October 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Trustee Process — Answer of Trustee — Interrogatories to Trustee — Mortgage of Personal Property.*

In a trustee process, the plaintiff attached a piano as the principal defendant's property, upon which there were of record two mortgages, one to A. for $400, and one to B. for $75, and summoned A. and B. as trustees; and they answered separately, denying funds of the principal defendant. In answer to interrogatories, A., who was the principal defendant's daughter, stated that she had a mortgage of the piano given to her by the principal defendant to secure a promissory note also given to her by the principal defendant, but she was not asked, and did not state, what was due on the mortgage; and B., who was the principal defendant's brother, stated that he took a mortgage of the piano from the principal defendant for $75 lent her at the time, which she had never repaid to

him, but which she still owed. The principal defendant, who was the only witness at the trial, testified that she bought the piano for $400, and had paid for it in full; that she gave a mortgage of it to A. for $400, of which $150 was paid by A. at the time, and the remaining $250 was due A. for work performed by her for the principal defendant; that the principal defendant had paid no part of the $400 to A.; that she afterwards gave a bill of sale of the piano to A.; and that, previously to the sale to A., the principal defendant gave a second mortgage of the piano to B., who paid her $75 at the time, which she had not repaid to him. The court, sitting without a jury, found that the mortgages were valid subsisting mortgages at the time the attachment was made; and that there was then due to A. upon her mortgage $150, and to B. upon his mortgage $75. *Held*, that, if the plaintiff could contradict the answers of the trustees, the findings of the court were justified by the evidence, and, if he could not contradict the answers, there was nothing to impair the validity of the mortgages; and that it was competent for the court to find, from the principal defendant's testimony as to the consideration of the mortgage to A., the amount due on it to A.

Trustee process. Writ dated May 19, 1891, upon which the plaintiff attached, as the property of the principal defendant, and as in her possession, a certain piano, then in the house occupied by her, upon which, at the date of the attachment, May 20, 1891, there were of record two mortgages given by her, one to Sarah F. Heald, dated December 21, 1889, for the nominal consideration of $400, and one to Frank H. Howe, dated May 17, 1890, for the nominal consideration of $75. Sarah F. Heald and Frank H. Howe, summoned as trustees, each answered that, at the time of service upon them, they had no funds, goods, effects, or credits of the principal defendant in their possession. The principal defendant was defaulted on January 29, 1892.

The plaintiff, on February 4, 1892, filed interrogatories to the alleged trustees respectively, in answer to which Sarah F. Heald stated that she had a mortgage of a piano given to her on December 21, 1889, by the principal defendant, to secure a promissory note also given to her by the principal defendant; and Frank H. Howe stated that he took a mortgage of the piano from the principal defendant on May 17, 1890, for $75, lent her at the time, which she had never repaid to him, but which she still owed.

Trial in the Superior Court, without a jury, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

It appeared that on May 23, 1891, while she was still mortgagee of record, the alleged trustee Sarah F. Heald brought an action of replevin for the piano, which was then, and still is,

under said attachment, against the deputy sheriff who made the attachment, in which action judgment was rendered in favor of the principal defendant therein. The principal defendant in the present action was called as a witness by the plaintiff, and was the only witness, and testified as follows:

" *Q.* What relation are you to Sarah F. Heald? *A.* I am her mother.

" *Q.* What relation to Frank H. Howe? *A.* His sister.

" *Q.* Whether at this time, the 21st of May, you owned a piano that was in your house? *A.* The piano was not in my possession, it was in the house.

" *Q.* Did you own the piano on that day? *A.* No, sir.

" *Q.* Did you ever own that piano? *A.* Yes.

" *Q.* When did you first own that piano? *A.* Some four or five years ago.

" *Q.* How much did you pay for it? *A.* I paid four hundred dollars.

" *Q.* Did you pay for it at once or in instalments? *A.* Instalments.

" *Q.* Whether you had paid for that piano in full on the 21st of December, 1889? *A.* Yes.

" *Q.* Have you ever given a mortgage on that? *A.* Not until I gave it to my daughter.

" *Q.* Sarah F. Heald? *A.* Yes.

" *Q.* Do you know when you gave that mortgage? *A.* I gave it at the time it is recorded on the city books. They will show.

" *Q.* Have you ever given another mortgage? *A.* I have never given her any other mortgage.

" *Q.* To any one? *A.* Yes.

" *Q.* Do you know when you gave the second mortgage? *A.* I don't remember the date.

" *Q.* To whom did you give that? *A.* To my brother, Frank Howe.

" *Q.* What, if any, consideration was paid to you by Sarah F. Heald at the time you gave the mortgage for four hundred dollars? *A.* There was something — about one hundred and fifty dollars I think — exchanged hands.

" *Q.* Had she given you anything before that as a part consideration for this mortgage? *A.* She had worked for me a long while.

" *Q.* How long ?   *A.* I cannot give you the dates; a very long time.

" *Q.* Where was your daughter living at this time ?   *A.* With me.

" *Q.* How long had she been living with you ?   *A.* I cannot tell you the exact dates.

" *Q.* Cannot you give any idea how long your daughter was living with you prior to the time you gave this mortgage; had she been living six months with you ?   *A.* Yes, longer than that.

" *Q.* During this time did she work for you ?   *A.* Yes, sir; she did.

" *Q.* What, if anything, did you pay her ?   *A.* Four dollars a week.

" *Q.* In addition to that she roomed there and boarded there at your home ?   *A.* Yes.

" *Q.* Had she any other home at this time ?   *A.* No, sir.

" *Q.* She was not living with her husband any during this time ?   *A.* No, sir.

" *Q.* That was all the money that passed at the time this mortgage was given, one hundred and fifty dollars ?   *A.* Yes.

" *Q.* Since that time has she given you any money ?   *A.* No, sir.

" *Q.* And she has continued to live with you since ?   *A.* No, sir; she has travelled.

" *Q.* How long after did she continue to live with you ?   *A.* Not very long.

" *Q.* You never paid back any part of it ?   *A.* No, sir.

" *Q.* Whether you have sold that piano subject to this mortgage ?   *A.* I have sold my interest in it.

" *Q.* When did you do that ?   *A.* I don't remember; some time before this affair came up.

" *Q.* To whom did you sell your interest ?   *A.* I sold it to my daughter.

" *Q.* Mrs. Heald ?   *A.* Yes.

" *Q.* Will you please state just what you did at that time ?   *A.* I gave her a bill of sale of it.

" *Q.* Have Frank H. Howe and yourself and your daughter been present at any time when you three have had conversation

about the matter of your selling your interest to your daughter?
*A.* I don't remember.

" *Q.* Did n't you testify, in the trial of that replevin suit, that you and your daughter and Mr. Howe talked this over, that you said to your daughter, ' I can't pay this, and I might as well give it up to you,' and Mr. Howe said, ' All right'? *A.* I think something of the kind was said, but I don't remember.

" *Q.* That is to say, you said something of the sort at the other trial? *A.* I think something of the kind was said.

" *Q.* At the time you gave the mortgage to Frank H. Howe, what consideration, if any, passed from him to you? *A.* Seventy-five dollars.

" *Q.* In what? *A.* In money.

" *Q.* Did you give him a note? *A.* No, sir.

" *Q.* Did you give your daughter a note? *A.* No, sir.

" *Q.* Has Mr. Howe ever paid you any part of this money? *A.* Mr. Howe paid me money at the time.

" *Q.* Have you ever paid Mr. Howe any part of the money? *A.* No, sir; I have not.

" *Q.* This money was all given to you at the time his mortgage was given? *A.* Yes.

" *Q.* His mortgage was given before you had sold your interest in that piano to your daughter? *A.* I don't remember; of course it must have been.

" *Q.* You have no doubt this second mortgage was given before you sold your interest in that piano to your daughter? *A.* No, sir."

On cross-examination, the witness testified as follows:

" *Q.* How much is due your daughter upon that mortgage which you gave her? *A.* I could n't tell exactly just how much. There must be considerable due.

" *Q.* Has any part of the four hundred dollars been paid by you to her? *A.* No, sir.

" *Q.* How did you arrive at that figure four hundred? You say your daughter gave you one hundred and fifty dollars in money; what did the other two hundred and fifty represent? *A.* It represents the balance of what I owed.

" *Q.* What did you owe her for? *A.* For work.

" *Q.* You owed her two hundred and fifty dollars for work? *A.* Yes, I owe her still.

" Q. Has any part of that four hundred dollars ever been paid to her by you ? A. No, sir."

On redirect examination, the witness testified as follows :

" Q. Let me ask you if it was not stated, at the time you gave that bill of sale to your daughter, that it cancelled your indebtedness to your daughter ? or did she not take that piano in payment ? A. I suppose it was."

The plaintiff asked the judge to rule, that, upon all the evidence in the case, there was not, at the time of the attachment, any valid existing mortgage upon the piano to either of the alleged trustees, or anything due them from the defendant upon either of the mortgages then of record.

The judge refused to rule as requested, and found and ruled that the mortgages were valid subsisting mortgages at the time the attachment was made; that there was then due to Sarah F. Heald, upon the mortgage held by her, the sum of $150 and interest from the date of the mortgage ; and that there was due to Frank H. Howe, at the time said attachment was made, the sum of $75 and interest from the date of the mortgage.

The plaintiff alleged exceptions.

*M. M. Taylor*, for the plaintiff.

*E. J. McMahon*, for the trustees, was not called upon.

Morton, J. The answers of the trustees would have been more regular if they had set out the facts of the mortgages and the amounts which were claimed to be due upon them. *Martin* v. *Bayley*, 1 Allen, 381. *Hayward* v. *George*, 13 Allen, 66. *Goulding* v. *Hair*, 133 Mass. 78. Instead of that, the trustees answered, " No funds," which was in effect submitting themselves to examination touching the validity of their mortgages and the amounts due upon them, and so the plaintiff seems to have understood it. *Goulding* v. *Hair, ubi supra ; Simmons* v. *Woods*, 144 Mass. 385, 389. *Emery* v. *Seavey*, 148 Mass. 566. He interrogated them, and they answered under oath, and the questions and answers form a part of the bill of exceptions. There is nothing in the answers tending to show that the mortgages were not valid. On the contrary, Frank H. Howe, one of the alleged trustees, answered that he took a mortgage on a piano from the principal defendant for seventy-five dollars lent her at the time, which he had never been repaid, and for

which she was still indebted to him. Sarah F. Heald, the other trustee, answered that she had a mortgage on a piano given to her by the principal defendant, to secure a note given to her by the principal defendant. She did not state how much was due on the mortgage, and the interrogatories did not call for it. If we assume that the plaintiff could contradict the answers of the alleged trustees, then, taking all the testimony in the case, the findings of the court were justified by it, although a portion of the evidence of the principal defendant may have tended to show that the mortgages were paid by a surrender of the piano. If the plaintiff could not contradict the answers of the trustees, then there was nothing to impair the validity of the mortgages. The answer of Howe stated how much was due him on his mortgage.

It was competent for the court to find, from the principal defendant's testimony as to the consideration of the mortgage, the amount due on it to Sarah F. Heald. Her testimony on that point tended to sustain, and not to contradict, the answers of the trustees, by showing that there was a valid mortgage, and related to a matter on which the trustees had not been interrogated and had made no statement. Pub. Sts. c. 183, § 17.

*Exceptions overruled.*